Charles Ben HOWELL, Plaintiff–Appellant,

v.

STATE BAR OF TEXAS, et al., Defendants–Appellees.

No. 87–1364.

United States Court of Appeals, Fifth Circuit.

April 27, 1988.

Tom S. McCorkle, McCorkle & Westerburg, Margaret E. Wood, Dallas, Tex., for plaintiff-appellant.

Linda A. Acevedo, Steven D. Peterson, First Asst., Austin, Tex., for State of Tex.

Before VAN GRAAFEILAND,[*] JOHNSON and JOLLY, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Charles Ben Howell appeals from a judgment of the United States District Court for the Northern District of Texas (Porter, J.) upholding the facial constitutionality of the disciplinary scheme for attorneys promulgated by the Texas Supreme Court, specifically Disciplinary Rule (DR) 1–102(A)(5). We affirm.

Recitals of the facts giving rise to this much-protracted litigation may be found in *Howell v. State Bar of Texas*, 674 F.2d 1027, 1028–29 (5th Cir.1982) (*Howell I*), *vacated*, 460 U.S. 1065, 103 S.Ct. 1515, 75 L.Ed.2d 942 (1983), *Howell v. State*, 559 S.W.2d 432 (Tex.Civ.App.1977, writ ref'd n.r.e.), and *Ex parte Howell*, 488 S.W.2d 123 (Tex.Crim.App.1972). We will not repeat them. In *Howell I*, we reversed the district court's dismissal of Howell's complaint which sought a declaration that the State disciplinary proceedings against him violated the United States Constitution and an injunction restraining the State Bar from enforcing the judgment of reprimand which it secured in those proceedings. In *State Bar of Texas v. Howell*, 460 U.S. 1065, 103 S.Ct. 1515, 75 L.Ed.2d 942 (1983), the Supreme Court vacated our judgment in *Howell I* and remanded the case for further consideration in the light of that Court's decision in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

In *Feldman*, the Court held that United States district courts have subject matter jurisdiction over general challenges to State Bar rules promulgated in non-judicial proceedings, but do not have jurisdiction to review State court decisions in specific disciplinary cases even though the bases for the decisions are challenged on constitutional grounds. Following the teachings of *Feldman*, we affirmed the district court's dismissal of all but one of Howell's constitutional claims on the ground they were " 'inextricably intertwined' with the Texas State Court's reprimand of Howell in a judicial proceeding." *Howell v. State Bar of Texas*, 710 F.2d 1075, 1077 (5th Cir.1983) (*Howell II*), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984). We remanded the case to the district court solely to determine the merits of Howell's "facial attack on the validity of the Texas disciplinary scheme." *Id.* at 1078. Correctly limiting its consideration to the issue thus presented to it, the district court rejected appellant's contention that the portion of the Texas disciplinary scheme enunciated in DR 1–102(A)(5) was unconstitutionally overbroad and vague. We agree.

DR 1–102(A)(5) provides in pertinent part that a lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice." This provision is not peculiar to the State of Texas. It was part of the American Bar Association's Code of Professional Responsibility promulgated in 1969 and subsequently adopted by almost every State in the Union. There was nothing startlingly innovative in DR 1–102(A)(5)'s contents. Since the early days of English common law, it has been widely recognized that courts possess the inherent power to regulate the conduct of attorneys who practice before them and to discipline or disbar such of those attorneys as are guilty of unprofessional conduct. *In re Snyder*, 472 U.S. 634, 643, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985); *Ex parte Wall*, 107 U.S. (17 Otto) 265, 273, 2 S.Ct. 569, 575, 27 L.Ed. 552 (1883); *Koden v. United States Department of Justice*, 564 F.2d 228, 233 (7th Cir.1977); *Mattice v.*

[*] Circuit Judge of the Second Circuit, sitting by designation.

*Meyer,* 353 F.2d 316, 319 (8th Cir.1965); *In re Claiborne,* 119 F.2d 647, 650 (1st Cir. 1941); *Graham v. State Bar Ass'n,* 86 Wash.2d 624, 631, 548 P.2d 310 (1976) (en banc). The State of Texas was no exception. *See Scott v. The State,* 86 Tex. 321, 323, 24 S.W. 789 (1894); *Harkins v. Murphy & Bolanz,* 51 Tex.Civ.App. 568, 570, 112 S.W. 136 (1908, writ dism'd); Green, *The Courts' Power Over Admission and Disbarment,* 4 Tex.L.Rev. 1, 29 (1925); Jeffers, *Government of the Legal Profession: An Inherent Judicial Power Approach,* 9 St. Mary's L.J. 385, 397–400 (1978).

The Texas Legislature has not remained silent in this area, however. "As early as January 18, 1860, the Legislature of [Texas] provided that any attorney who should be guilty of fraudulent or dishonest conduct, or of any malpractice, might be suspended, or his license be revoked, by the district court of the county in which he resided, or where such conduct or malpractice occurred." *Burns v. State of Texas,* 129 Tex. 303, 306, 103 S.W.2d 960 (1937). The Legislature provided further that "[n]o attorney shall be suspended or stricken from the rolls for contempt unless it involve fraudulent or dishonorable misconduct or malpractice." Tex.Rev.Civ.Stat. Ann. art. 312 (Vernon 1973). Article 312 remained in effect until 1987, when it was repealed by Acts 1987, 70th Leg., ch. 148 § 3.02(a), and a new section, 2 Tex.Gov't Code Ann. § 82.061(b) (Vernon 1988), containing substantially similar language, was added. In applying the century-old rules illustrated by the above statutes, Texas courts have held that it is only the "official conduct" of lawyers with which they are concerned, and disbarment cannot be predicated upon opprobrious or abusive epithets directed by a lawyer to a judge in vacation, *Jackson v. The State,* 21 Tex. 668, 674 (1858), or upon an out-of-court expressed hope that Germany would win World War I, *Lotto v. State,* 208 S.W. 563 (Tex.Civ. App.1919). *See also State Bar of Texas v. Semaan,* 508 S.W.2d 429 (Tex.Civ.App. 1974, writ ref'd n.r.e.), where an attorney's criticism of a judge in a letter to a newspaper was held not to constitute unprofessional conduct prejudicial to the adminis-

tration of justice within the meaning of DR 1–102(A)(5), and the similar holding of the Supreme Court in *In re Snyder, supra,* 472 U.S. at 646, 105 S.Ct. 2881, interpreting the inherent disciplinary power of a United States Court of Appeals.

Texas adheres to the well established doctrine that "[a]n attorney, after being admitted to practice, becomes an officer of court, exercising a privilege or franchise." *Harkins v. Murphy & Bolanz, supra,* 51 Tex.Civ.App. at 569, 112 S.W. 136. So also does this Court. *See, e.g., Dolan v. United States,* 351 F.2d 671, 672 (5th Cir.1965). Case after case can be cited in support of the general proposition that, as officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens. Judge, later Justice, Cardozo, a leading and much-quoted articulator of this duty, said that "like the court itself, [the lawyer is] an instrument or agency to advance the ends of justice." *People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 470–71, 162 N.E. 487 (1928). This language was quoted with approval by the Supreme Court as recently as 1985 in *In re Snyder, supra,* 472 U.S. at 644, 105 S.Ct. at 2880. The Supreme Court expressed this obligation in similar language in describing attorneys as "assistants to the court in search of a just solution to disputes." *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1978) (quoting *Cohen v. Hurley,* 366 U.S. 117, 124, 81 S.Ct. 954, 958, 6 L.Ed.2d 156 (1961)).

The Texas cases which both antedated and followed the adoption of DR 1–102(A)(5) demonstrate quite clearly that the State's primary concern consistently has been with the obligation of lawyers in their quasi-official capacity as "assistants to the court." *See State Bar v. Semaan, supra,* 508 S.W.2d at 432–33. In the very case giving rise to the instant action, *Howell v. State, supra,* 559 S.W.2d at 436, the Texas court described the term "administration of justice" as used in DR 1–102(A)(5), as "the trial of cases in the court and their judicial determination and disposition by orderly procedure, under rules of law, and putting of the judgment into effect," and the State

court's holding was based specifically on its conclusion that appellant's conduct was "injurious, hurtful and detrimental to the orderly trial of the case before the court," and therefore "prejudicial to the administration of justice." *Id.*

In *In re Snyder, supra,* 472 U.S. at 644–45, 105 S.Ct. at 2881, former Chief Justice Burger described the lawyer's role in the administration of justice in the following language:

> As an officer of the court, a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers. Admission creates a license not only to advise and counsel clients but also to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms. The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.

So far as we can determine, this is what Texas demands under DR 1–102(A)(5). Under such circumstances, we find no merit in appellant's claim of overbreadth. Overbreadth is " 'strong medicine,' which 'has been employed ... sparingly and only as a last resort,' ...." *Bates v. State Bar of Arizona,* 433 U.S. 350, 381, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). "[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications...." *New York v. Ferber,* 458 U.S. 747, 771, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982). Put another way, a statute should not be invalidated where there are a "substantial number of situations to which it might be validly applied." *Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974). Where, as here, Texas consistently has applied the doctrine of DR 1–

102(A)(5) to attorneys in their functions as officers of the court and has recognized its obligation to make such application consistent with the demands of the Constitution, this Court should not void the regulation as facially overbroad. *See Time, Inc. v. Hill,* 385 U.S. 374, 397, 87 S.Ct. 534, 546, 17 L.Ed.2d 456 (1967); *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 506 n. 13, 105 S.Ct. 2794, 2803 n. 13, 86 L.Ed.2d 394 (1985).

The district court likewise did not err in rejecting appellant's contention that DR 1–102(A)(5) was unconstitutionally vague. The traditional test for vagueness in regulatory prohibitions is whether "they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *United States Civil Serv. Comm'n. v. National Ass'n of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973) (quoted in *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974)). The particular context in which a regulation is promulgated therefore is all important. *American Communications Ass'n v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 690, 94 L.Ed. 925 (1950). The regulation at issue herein applies only to lawyers, who are professionals and have the benefit of guidance provided by case law, court rules and the "lore of the profession." *In re Snyder, supra,* 472 U.S. at 645, 105 S.Ct. at 2881.

Assuming for the argument that DR 1–102(A)(5) might be considered vague in some hypothetical, peripheral application, this does not, as this Court observed in *Home Depot, Inc. v. Guste,* 777 F.2d 1063, 1064 (5th Cir.1985), warrant throwing the baby out with the bathwater. To invalidate the regulation in toto, as appellant would have us do, we would have to hold that it is impermissibly vague in all of its applications. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982). We are not prepared to do this. *See United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

We have reviewed appellant's other contentions and find them to be without merit. The judgment of the district court is

AFFIRMED.