**Barry Robert BENTON, Appellant,**

v.

**COMMISSION OF LAWYER DISCIPLINE, Appellee.**

No. 13–94–221–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 21, 1996.

Rehearing Overruled Nov. 21, 1996.

785

Barry R. Benton, Edmund Cyganiewicz, Brownsville, for appellant.

Dawn Miller, Assistant General Counsel, James M. McCormack, General Counsel, State Bar of Texas, Austin, Dana C. Livingston, Vinson & Elkins, L.L.P., Houston, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION ON MOTION FOR REHEARING

CHAVEZ, Justice.

We overrule appellee's motion for rehearing, withdraw our opinion of May 23, 1996, and substitute this opinion for our previous opinion.

The Commission On Lawyer Discipline of the State Bar of Texas brought a disciplinary action against attorney Barry Robert Benton, appellant. The Commission alleged that appellant violated Rule 3.06(d) of the Texas Disciplinary Rules of Professional Conduct. During the action, appellant stipulated that he violated Rule 3.06(d), but he asserted that the rule was unconstitutional. The court entered judgment against appellant and ordered appellant's suspension from the practice of law for six months. The suspension was probated for one year with conditions of probation. Appellant appeals by four points of error. We reverse the trial court's judgment and dismiss the case.

In October 1991, appellant tried a personal injury lawsuit in which he represented the plaintiffs. The case was tried to a jury, which returned a take-nothing verdict. Four months after the original jury trial, and after the plaintiffs had been granted a new trial,

appellant sent a letter to the members of the discharged jury criticizing their verdict. Appellant's letter was carbon copied to his client, but not copied to the trial court or to opposing counsel.

Specifically, appellant's letter stated:

It has been over four months since you sat on the jury in the above-referenced case and returned a verdict that Mr. and Mrs. Florentino Salas suffered no damages as a result of the bike accident involving Mr. Salas and the Abete's [sic] dog.

I was so angry with your verdict that I could not talk with you after the trial. I could not believe that 12 allegedly, good people from Cameron County, who swore to return a verdict based on the evidence, could find that the Salases were not damaged. The only evidence admitted at trial was that Mr. Salas was hurt. The Abete's [sic] lawyer, paid for by State Farm Insurance Company, admitted that Mr. Salas was injured. There was no evidence introduced that Mr. Salas was not injured. Yet by your answers, you found that Mr. Salas was not injured.

The only reason I can see as to why you ignored the evidence is that you were affected by the "Lawsuit Abuse" campaign in the Valley. Why else would a jury breach its oath to render a true verdict based on the evidence? I want to say that when you make a finding in a trial which is not based on the evidence[,] you are perverting our civil justice system and hurting everyone in the community. Who knows, maybe someday you will need the aid of our civil justice system and it will be as corrupted for you as you made it for the Salases. The next time you think of government as crooked, remember your contribution to the corruption of good government. You knew Mr. Salas was injured, but swore that he was not.

Your cold and unfair conduct does not matter now. Judge Hester reviewed the evidence admitted at trial and decided that your verdict was obviously unjust and granted the Salases a new trial. The first trial now was nothing more than a waste of everyone's time and the county's money. The Salases and myself are very relieved

that our justice system may still provide a fair resolution to their claim, despite your verdict.

If you wish to discuss anything in this letter, please feel free to contact me.

The Commission brought this disciplinary action against appellant pursuant to Rule 3.06(d), which provides:

After discharge of the jury from further consideration of a matter with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service.

TEX. DISCIPLINARY R. PROF. CONDUCT 3.06(d) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1996) (STATE BAR RULES art. X, § 9).

Benton filed a motion for summary judgment in which he admitted that he violated Rule 3.06(d) because "he communicated with members of the jury by letter to influence their actions in future jury service." However, Benton alleged that the rule was unconstitutional. No ruling on appellant's motion for summary judgment appears in the record. The trial court entered judgment against appellant based upon a violation of Rule 3.06(d).

By four points of error, appellant contends that Rule 3.06(d) is unconstitutional because (1) it is a content-based restriction of free speech without sufficiently compelling justification; (2) it denies appellant equal protection of the law as guaranteed by the Texas and United States Constitutions; (3) it is overbroad in violation of the Texas and United States Constitutions; and (4) it is unconstitutionally vague under the Texas and United States Constitutions.

■ Without deciding whether Rule 3.06(d) is an unconstitutional content-based restriction on free speech, whether it denies equal protection, or whether it is subject to the overbreadth doctrine, we agree that the rule is unconstitutionally vague; thus, the rule is void.

■ In the United States, courts have historically regulated admission to the practice of law before them and exercised the authority to discipline, and ultimately to disbar, lawyers whose conduct departed from prescribed standards. *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1066, 111 S.Ct. 2720, 2740, 115 L.Ed.2d 888 (1991); *Howell v. State Bar of Tex.,* 843 F.2d 205, 206 (5th Cir.1988), *cert. denied,* 488 U.S. 982, 109 S.Ct. 531, 102 L.Ed.2d 563 (1988). "Membership in the bar is a privilege burdened with conditions." *Gentile,* 501 U.S. at 1066, 111 S.Ct. at 2740; *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957).

■ Texas adheres to the well-established doctrine that admission to the practice of law qualifies an attorney as an officer of the court, exercising a privilege. *Howell,* 843 F.2d at 207. As officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens. *Id.*

■ However, prescribed standards that regulate the conduct of attorneys are subject to traditional tests for vagueness. *See id.* at 208. The traditional test for vagueness in regulatory prohibitions is whether "they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Id.* (quoting *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL–CIO,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973)). Applying this test, we consider that the rule was fashioned to regulate a profession whose members can be expected to consult applicable regulations and the interpretations of those regulations. *State Bar of Tex. v. Tinning,* 875 S.W.2d 403, 408 (Tex. App.—Corpus Christi 1994, writ denied); *Howell,* 843 F.2d at 207.

■ A regulatory prohibition must give fair notice and adequate warning to those to whom it is directed. *Gentile,* 501 U.S. at 1048, 1077–78, 111 S.Ct. at 2731, 2746–47; *Grayned v. City of Rockford,* 408 U.S. 104, 112, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222 (1972); *see Tinning,* 875 S.W.2d at 408. A lawyer whose conduct is subject to discipline should not have to guess what particular conduct may be prohibited. *See Gentile,* 501 U.S. at 1048–49, 111 S.Ct. at 2731.

■ The imposition of penalties for the violation of a rule that contains vague and indefinite phrases constitutes a denial of due process of law. *Cramp v. Board of Pub. Instruction,* 368 U.S. 278, 287, 82 S.Ct. 275, 280–81, 7 L.Ed.2d 285 (1961); *see Texas Liquor Control Bd. v. Attic Club, Inc.,* 457 S.W.2d 41, 45 (Tex.1970); *Tinning,* 875 S.W.2d at 408. To invalidate Rule 3.06(d), we must find that it is impermissibly vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192–93, 71 L.Ed.2d 362 (1982); *Howell,* 843 F.2d at 208.

In this case, Rule 3.06(d) prohibits a lawyer connected with a case from directing comments to members of a discharged jury that are calculated "*merely* to *harass* or *embarrass* the juror or to *influence* his actions in future jury service." TEX. DISCIPLINARY R. PROF. CONDUCT 3.06(d) (1989) (emphasis added). This language defines the prohibited conduct in "terms of degree," which do not lend themselves to one settled usage or tradition of interpretation in law. *See Gentile,* 501 U.S. at 1048–49, 111 S.Ct. at 2731; *see also Long v. State,* 931 S.W.2d 285 (Tex. Crim.App.1996) (stalking provision that defined requisite criminal intent by terms which included "harass" and "embarrass" was held unconstitutionally vague on its face). Thus, a lawyer has no guidance for determining when his actions are proscribed. *Id.* at 1049, 111 S.Ct. at 2731.

Black's Law Dictionary defines harassment as a "course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." BLACK'S LAW DICTIONARY 717 (6th ed.1991). As appellant suggests, the definition's "course of conduct" implies repetition or conduct of a continuing nature. Under this definition, an attorney must guess whether a single letter might constitute harassment.

Harassment is further defined as a term "used in a variety of legal contexts to describe words, gestures and actions which tend to annoy, alarm and abuse (verbally) another person." *Id.* Similar words con-

tained in this definition, such as "annoy," have been found to be unconstitutionally vague. *See Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971) (ordinance making it a criminal offense for three or more persons to conduct themselves in an *annoying* manner was found unconstitutionally vague); *Long,* 931 S.W.2d 285 (stalking provision that defined requisite criminal intent by terms which included "annoy" was held unconstitutionally vague on its face).

Furthermore, the prohibition against vague regulations of speech is also based on the need to eliminate the risk of discriminatory enforcement. *Gentile,* 501 U.S. at 1051, 111 S.Ct. at 2732–33. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2299; *Tinning,* 875 S.W.2d at 408.

The word "merely" in the rule provides opportunity for discriminatory enforcement. For example, if a message is embarrassing, harassing, or calculated to influence a juror's future jury service, but has a significant political message, it could be construed that the message is not *merely* calculated to embarrass, harass, or to influence.

In fact, discriminatory enforcement did occur in this case. Appellee adduced testimony from Thomas Clay Hollis, appellant's opposing counsel in the original trial, who testified that he also sent a letter to the discharged jurors. However, Hollis' letter complimented the jurors for their service and encouraged future jury service. This letter also attempted to influence the jurors' actions in future jury service, a violation of Rule 3.06(d), yet the state bar did not prosecute Hollis.

Appellee refers this Court to cases in which regulatory prohibitions were upheld against constitutional attacks on vagueness. However, those cases are distinguishable because the regulations were not open-ended. Instead, they provided definitions for the proscribed conduct and listed specific activities that were prohibited. *See Gentile,* 501 U.S. at 1076, 111 S.Ct. at 2745–46 (to assist a lawyer in deciding whether an extrajudicial statement is problematic, rule sets out statements that are likely to violate rule); *United States Civil Serv. Comm'n,* 413 U.S. at 562, 577, 93 S.Ct. at 2888–89, 2896–97 (regulation not impermissibly vague where prohibited activities were set out in separate paragraphs and terms describing conduct were defined); *Howell,* 843 F.2d at 206, 207–08 (provision upheld against constitutional attacks for vagueness where it was promulgated in the American Bar Association's Code in 1969, had been subsequently adopted by almost every state, and was specifically defined by Texas courts).

Without definitions and specific examples of proscribed activities that violate Rule 3.06(d), an attorney must guess, without any guidance, what conduct constitutes harassment, embarrassment, or influence of future jury service. Moreover, conduct that embarrasses, harasses, or influences some people does not embarrass, harass, or influence others. *See Coates,* 402 U.S. at 614, 91 S.Ct. at 1688. The rule subjects lawyers' conduct to an unascertainable standard, and as a result, persons of "common intelligence must necessarily guess at its meaning." *See id.; Cramp,* 368 U.S. at 287, 82 S.Ct. at 280–81. In sum, Rule 3.06(d) is impermissibly vague in all of its applications and subjects lawyers to discriminatory enforcement without fair notice. Thus, the action under review denied appellant due process of law. We sustain appellant's fourth point of error and hold that Rule 3.06(d) is unconstitutionally vague.

We further note that, at best, appellant exhibited rude and disrespectful conduct toward the discharged jurors. Appellant's conduct probably would have violated a constitutionally sound regulation prescribed to maintain the integrity of the jury system if the regulation had defined key terms and specified prohibited activities. We do not encourage such conduct against citizens who are required to serve as jurors.

Judgment of the trial court is REVERSED and the case is ordered DISMISSED.