2016 ND 189

In the Matter of Reciprocal DISCIPLINE OF Nicholas T. HADERLIE, a Member of the Bar of the State of North Dakota.

No. 20160133.

Supreme Court of North Dakota.

Sept. 20, 2016.

PER CURIAM.

Recommendation for Reciprocal Discipline.

[¶ 1] On January 20, 2015, the Disciplinary Board notified the Supreme Court under N.D.R. Lawyer Discipl. 4.4(D) that it was recommending dismissal of this reciprocal discipline matter against Nicholas T. Haderlie, a member of the bar of North Dakota.

[¶ 2] Haderlie was admitted to practice in North Dakota in 2012 and has been licensed since that time. He is also licensed in Colorado, Montana, Utah, and Wyoming. Haderlie was arrested on October 19, 2014, and later plead guilty to misdemeanor violations of Wyoming Statutes § 31–5–233, driving or having control of a vehicle while under the influence of intoxicating liquor or controlled substances and § 6–5–204(a), interference with a peace officer. The record reflects that on July 2, 2015, the Wyoming Supreme Court publicly censured Haderlie after he acknowledged his conduct violated Rule 8.4(b) and Rule 8.4(d) of the Wyoming Rules of Professional Conduct for Attorneys at Law.

[¶ 3] Haderlie has no prior discipline in North Dakota, and no prior discipline in Colorado, Montana, or Utah before this matter. As a result of Haderlie's conduct, Haderlie stipulated to reciprocal discipline in Colorado and Utah. The matter was dismissed by the Montana Office of Disciplinary Counsel as a matter of law because the underlying convictions are not the type of conduct that normally give rise to discipline in Montana.

[¶ 4] The record reflects Disciplinary Counsel served Haderlie notice under N.D.R. Lawyer Discipl. 4.4(B) that a certified copy of the Supreme Court of Wyoming order of public censure was received. The notice informed Haderlie that he had 30 days to file any claim that imposition of the identical discipline in North Dakota would be unwarranted and the reasons for the claim. On September 2, 2015, Haderlie filed a response to the notice stating that his conduct does not give rise to a lawyer disciplinary action in North Dakota, or alternatively, that his conduct warrants substantially different discipline based on North Dakota precedent and considering mitigating factors.

[¶ 5] On April 12, 2016, the Disciplinary Board filed its recommendation to dismiss this reciprocal discipline matter against Haderlie. After consideration of the recommendation, this Court requested the parties file briefs on whether interference with a peace officer is an offense for which discipline might be imposed in North Dakota. On June 30, 2016, Haderlie and Disciplinary Counsel filed their briefs, both arguing discipline should not be imposed in North Dakota.

[¶ 6] Disciplinary Counsel argued that neither of Haderlie's convictions constitute a serious crime under N.D.R. Lawyer Discipl. 4.1 and that neither crime is contemplated by N.D.R. Prof. Conduct 8.4(b) or 8.4(f) for purposes of discipline. Disciplinary Counsel argued discipline would not have been imposed upon a North Dakota practicing lawyer for Haderlie's convictions. Haderlie argued interference with a peace office does not give rise to discipline in North Dakota under N.D.R. Prof. Conduct 8.4(b) or 8.4(f). Haderlie argued, alternatively, that if this Court concludes interference with a peace officer is an of-

fense for which discipline might be imposed, the absence of precedent disciplining a lawyer for similar conduct suggests a lesser sanction is warranted in North Dakota. He argued mitigating factors are present in his case that should weigh in favor of reduction of a sanction.

[¶ 7] The Court considered the matter, and

[¶ 8] ORDERED, that this reciprocal discipline matter against Nicholas T. Haderlie, is DISMISSED.

[¶ 9] CAROL RONNING KAPSNER, LISA FAIR McEVERS, and DANIEL J. CROTHERS, JJ., concur.

CROTHERS, Justice, specially concurring.

[¶ 10] I have signed the Court's decision and offer this separate writing to explain why I want to, but cannot, agree with the dissent.

[¶ 11] I have high confidence that I speak for all of my colleagues in stating we do not condone Attorney Haderlie's conduct leading to his criminal charge of interfering with a peace officer. However, our application of law requires precision and the result here turns on the distinction between criminal activity and unethical conduct warranting lawyer discipline.

[¶ 12] The North Dakota Rules of Professional Conduct specifically provides for discipline when a lawyer commits a crime. The Rule states "[i]t is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." N.D.R. Prof. Conduct 8.4(b). Even though Haderlie's lawyer discipline was for commission of a crime, Wyoming did not find a violation of this subsection. In the North Dakota case the parties agree subsection 8.4(b) does not apply to this case. No member of the Court suggests otherwise.

[¶ 13] Not imposing lawyer discipline on Haderlie for committing the crime of interfering with a police officer fits with both the words of Rule 8.4(b) and the rationale behind the rule. The rule's rationale is explained as follows:

"Not all illegal conduct is disciplinable. The Model Code forbade only those crimes that involved 'moral turpitude.' The problem with the test of 'moral turpitude' is that it is vague and ill-defined. It is not at all evident that the drafters of the Model Code intended to make disciplinable those crimes that are not functionally related to fitness to practice law, particularly because other provisions in the Code imply that such a functional relationship is necessary. Nonetheless, the uncertainness and ambiguity of the 'moral turpitude' standard allows, or even invites, a court to discipline attorneys for acts that may be crimes in some states, although the crime is not connected or even relevant to the client-attorney relationship."

Ronald D. Rotunda and John S. Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility*, § 8.4–2, 1351 (2015–2016 ed.2015).

[¶ 14] In contrast to the specific provision regarding criminal activity, the North Dakota Rules of Professional Conduct more generally provides, "It is professional misconduct for a lawyer to: (f) engage in conduct that is prejudicial to the administration of justice...." N.D.R. Prof. Conduct 8.4(f).[1]

---

1. North Dakota's Rule 8.4 is adopted from the American Bar Association's Model Rules of Professional Conduct. Our Rule 8.4(f) corresponds to ABA Model Rule 8.4(d). *See* Annotated Model Rules of Prof'l. Conduct, R. 8.4 (7th ed.2011).

[¶ 15] Professor Rotunda's *Deskbook* describes the history of this provision as follows:

"The final version of the Rules (but *not* the Proposed Final Draft of May 30, 1981) announces that it is disciplinable for a lawyer to 'engage in conduct that is prejudicial to the administration of justice.' Opponents of this language argued unsuccessfully that this standard—which came from the Model Code—was too vague and loose to be a criterion in a legal code. They argued that there is a basic unfairness in asserting the power to take away one's livelihood, one's ability to practice law, based on a standard so undefined, vague, and amorphous that it varies with the eyes of the beholder."

Ronald D. Rotunda and John S. Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility*, § 8.4-2, 1357 (2015–2016 ed.2015). The "undefined," "vague," "loose" and "amorphous" language in rules like North Dakota's 8.4(f) has withstood constitutional challenges for vagueness and overbreadth "because the standard is considered in light of the traditions of the legal profession and its established practices." *Comm. on Legal Ethics v. Douglas*, 179 W.Va. 490, 370 S.E.2d 325, 328 (1988). This ethical provision also has withstood constitutional challenge because lawyers are professionals who "have the benefit of guidance provided by case law, court rules and the 'lore of the profession.'" *Howell v. State Bar of Texas*, 843 F.2d 205, 208 (5th Cir.1988).

[¶ 16] Here, the constitutionally necessary notice, standards and guidance are provided in part by the commentary this Court adopted along with the substantive rules regulating lawyer conduct. A comment to Rule 8.4 clarifies that every moral or legal misstep will not subject a lawyer to professional discipline:

"Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' The concept of 'moral turpitude' may be construed to include offenses concerning matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice fall within that category."

*Id.* cmt. 2.

[¶ 17] The constitutionally necessary notice, standards and guidance also come from judicial application. North Dakota has not directly defined the term "prejudicial to the administration of justice" as used in Rule 8.4(f). But we have numerous cases applying 8.4(f) to court proceedings and the representation of clients. *See e.g., In re Disciplinary Action Against Howe*, 2014 ND 17, ¶ 3, 842 N.W.2d 646 (interim suspension ordered because criminal charge of conspiracy to murder trial witness was conduct prejudicial to administration of justice); *In re Disciplinary Action Against Summers*, 2014 ND 19, ¶ 9, 842 N.W.2d 842 (willful violation of court order constituted conduct prejudicial to the administration of justice); *In re Kenny*, 2010 ND 142, ¶ 2, 785 N.W.2d 929 (representation of a client had no substantial purpose other than to burden another lawyer and coerce a refund of an attorney

fee and was prejudicial to administration of justice); *In re Disciplinary Action Against McCray*, 2008 ND 162, ¶ 27, 755 N.W.2d 835 (soliciting vulnerable clients for pecuniary gain and charging unreasonable fees for mailing false and misleading dispute letters to credit reporting agencies in the clients' names is conduct reflecting adversely on lawyer's fitness and is prejudicial to the administration of justice); *In re Disciplinary Action Against Johnson*, 2007 ND 203, ¶ 34, 743 N.W.2d 117 (knowingly made false statements to district court during representation of a client); *In re Disciplinary Action Against Stensland*, 2006 ND 251, ¶¶ 7–10, 725 N.W.2d 191 (attorney improperly signed, or directed another to improperly sign, bankruptcy petition requiring client's signature); *In re Disciplinary Action Against Overboe*, 2006 ND 249, ¶ 4, 724 N.W.2d 576 (application for interim suspension granted where attorney offered to forego collection of legal fees in exchange for sexual favors, which constituted conduct prejudicial to administration of justice); *In re Balerud*, 2006 ND 164, ¶¶ 6–8, 719 N.W.2d 329 (lawyer missing scheduled mediation and meetings, was disorganized throughout representation of client, and proposed to waive his fees if client did not file disciplinary complaint engaged in conduct prejudicial to administration of justice); *In re Disciplinary Action Against Peterson*, 2004 ND 101, ¶¶ 4, 8, 680 N.W.2d 238 (application for interim suspension ordered for conduct prejudicial to administration of justice where attorney notarized forged client signature on an affidavit and forged a district court judge's signature on a purported order of the district court); *In re Application for Transfer to Incapacitated Status of Edwardson*, 2004 ND 17, ¶¶ 3–5, 673 N.W.2d 644 (lawyer transferred disability inactive status for engaging in conduct prejudicial to the administration of justice by not taking reasonably practicable steps to protect a client's interests after termination of representation by surrendering papers and property to which the client is entitled); *In re Disciplinary Action Against Edwardson*, 2002 ND 106, ¶ 15, 647 N.W.2d 126 (disobeying court order to produce documents and failure to advise client of order, motion preceding order and court imposed sanctions was conduct prejudicial to the administration of justice).

[¶ 18] In our sister states, the term has a near-universal application to conduct connected with judicial proceedings:

"Subsection (d), identical to DR 1–102(A)(5) of the Model Code, prohibits a lawyer from engaging in 'conduct that is prejudicial to the administration of justice.' Although the rule applies to both personal and professional conduct, it is usually—but not always—limited to conduct connected with court proceedings. *See, e.g., In re Friedman*, 23 P.3d 620 (Alaska 2001) ('[t]he cases suggest that DR 1–102(A)(5) contemplates conduct which impedes or subverts the process of resolving disputes; it is conduct which frustrates the fair balance of interests or "justice" essential to litigation or other proceedings'; thus, although lawyer's mishandling of client funds in trust account violated other ethics rules, it did not violate this rule); *People v. Jaramillo*, 35 P.3d 723 (Colo.2001) (violation of Rule 8.4(d) 'requires proof of some nexus between the conduct charged and an adverse effect upon the administration of justice'); *In re Mason*, 736 A.2d 1019 (D.C.1999) (to violate rule, conduct must be improper, have direct bearing on judicial process in connection with 'an identifiable case or tribunal,' and taint judicial process in more than minimal way; lawyer violated rule by lying under oath to Federal Home Loan Bank Board, a quasi-judicial body, in course of agency investigation); *In re*

*Winkler,* 834 N.E.2d 85 (Ind.2005) (suspending two prosecutors who stole notes from defense lawyer's legal pad after he left room to consult with client during course of deposition: 'Not only did they potentially jeopardize a criminal prosecution, they also damaged the public's perception of the criminal justice system, attempted to evade the authority of the judge, and ignored the protections created by our rules of procedure.'); *In re Pyle* [283 Kan. 807], 156 P.3d 1231 (Kan.2007) (rule can be violated 'even if a legal proceeding has ended and even if the lawyer stops somewhere short of spreading outright lies'; disciplined lawyer sent letters to people complaining that disciplinary process 'stacked against him'); *Attorney Grievance Comm'n v. Elmendorf* [404 Md. 353], 946 A.2d 542 (Md.2008) (lawyer violated rule by suggesting to acquaintance seeking no-fault divorce that she could avoid one-year separation requirement by lying to court about it); *Miss. Bar v. Rogers,* 731 So.2d 1158 (Miss.1999) (conduct must be 'connected to judicial proceedings'; conversion of fees in connection with title work and loan closings did not violate rule); *In re Smith* [316 Or. 55], 848 P.2d 612 (Or.1993) (lawyer must have engaged in improper conduct 'in the course of some judicial proceeding or a matter directly related thereto,' and conduct 'must have caused or had the potential to cause ... more than minimal harm'); *In re Young* [366 S.C. 180], 621 S.E.2d 359 (S.C.2005) (violation of state ethics rule prohibiting lawyers from threatening criminal prosecution to gain advantage in civil matter also constituted conduct prejudicial to administration of justice); *Lawyer Disciplinary Bd. v. Kupec* [202 W.Va. 556], 505 S.E.2d 619 (W.Va.1998) (citing cases in which lawyers found to have violated rule in matters 'only tangentially related

to litigation'); *see also In re Discipline of Attorney* [442 Mass. 660], 815 N.E.2d 1072 (Mass.2004) (conduct that does not violate any other ethics rule cannot violate this rule 'unless it is so "egregious" and "flagrantly violative of accepted professional norms" as to "undermine the legitimacy of the judicial process" ').

"In some jurisdictions, a lawyer's criminal conduct can also violate Rule 8.4(d), even though unrelated to a legal proceeding. *See, e.g., Attorney Grievance Comm'n v. Childress* [364 Md. 48], 770 A.2d 685 (Md.2001) (rule encompasses criminal conduct by lawyer; lawyer used Internet to solicit sex with underage girls); *In re Petition for Disciplinary Action against Gherity,* 673 N.W.2d 474 (Minn.2004) (convictions for assault and disorderly conduct violated Rule 8.4(b) and (d)). *But see Attorney Disciplinary Bd. v. Templeton,* 784 N.W.2d 761 (Iowa 2010) ('mere act of committing a crime does not constitute a violation of this rule'; no violation for criminal conduct related to peering into windows of house owned by several women)."

Annotated Model Rules of Prof'l Conduct, R. 8.4 annot. at p. 624 (7th ed.2011).

[¶ 19] Here, Haderlie's conduct was not connected to either the representation of a client nor a judicial proceeding. Rather, his arrest and conviction stemmed from off-the-job alcohol consumption and a confrontation with law enforcement that occurred at his home. Under these circumstances, Haderlie's criminal conduct does not fit the majority-view legal application and definition of "prejudicial to the administration of justice" so that professional discipline properly can be imposed.

[¶ 20] DANIEL J. CROTHERS, J., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 21] I would impose an admonition as reciprocal discipline for Haderlie's conduct for interfering with a peace officer in Wyoming for which he was convicted and disciplined in that State. I respectfully dissent to the conclusion that a lawyer in North Dakota would not be disciplined for similar action were it to occur in this State.

[¶ 22] Rule 8.4(f), N.D.R. Prof. Conduct, provides: "It is professional misconduct for a lawyer to: . . . (f) engage in conduct that is prejudicial to the administration of justice, . . ." Apparently, as the concurring opinion seems to illustrate, the rule of interpretation found in N.D.C.C. § 1–02–05 that when the wording is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit, does not apply to our disciplinary rules. Black's Law Dictionary, 7th edition, defines the term "administration of justice" as follows: "The maintenance of right within a political community by means of the physical force of the state; the state's application of the sanction of force to the rule of right." Under that definition were his acts not prejudicial to the administration of justice and therefore professional misconduct under the plain language of the rule?

[¶ 23] While it may be arguable that not all crimes are necessarily prejudicial to the *administration* of justice, I do not agree that only that conduct connected with judicial proceedings is encompassed by the rule. It seems imperious to conclude that only in the setting of a judicial proceeding can there be acts prejudicial to the administration of justice. Persons other than lawyers and judges are involved in the administration of justice, albeit in a different setting. Lawyers are required to take an oath of office prescribed by N.D.C.C. § 27–11–20 and § 4 of Article XI of the North Dakota Constitution to "faithfully discharge the duties of the office of attorney and counselor at law." Peace officers also are required to take the same oath to "faithfully discharge the duties" of their office. N.D.C.C. § 44–01–05. Haderlie was convicted in Wyoming for interfering with a peace officer who was fulfilling the duties of the office to uphold the Constitution of the United States and the Constitution of the State of Wyoming. The disciplinary authorities in Wyoming determined Haderlie was subject to discipline under statutes and rules similar to those in North Dakota. We should do the same. The sorry spectacle of a licensed lawyer interfering with a peace officer acting in the line of duty is not only damaging to the image and reputation of the legal profession, it is, I submit, conduct prejudicial to the administration of justice.

[¶ 24] Nor do I agree, as Haderlie appears to argue, that because heretofore no North Dakota lawyer has been disciplined for similar conduct that fact somehow immunizes him from reciprocal discipline. To my knowledge the issue has not been before this Court prior to this time. I believe it is clearly prejudicial to the administration of justice for a lawyer to interfere with a peace officer acting in the line of duty and I would impose reciprocal discipline. But, if, as the majority concludes, our rules do not currently make this conduct subject to disciplinary action, they should be amended to do so.

[¶ 25] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., concur.