**Allan R. HAWKINS, Appellant,**

v.

**THE COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 08–97–00515–CV.

Court of Appeals of Texas, El Paso.

March 18, 1999.

Rehearing Overruled May 12, 1999.

**32.** *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

**33.** *Jones v. State,* 944 S.W.2d 642, 648 (Tex.Crim. App.1996); *Clewis,* 922 S.W.2d at 135.

John R. Gladney, Law Office of John R. Gladney, Houston, for Appellant.

Jerald Grimes Molleston, Michael F. Felber, Wells Felber Purcell & Kraatz, Fort Worth, Linda Acevedo, Asst. Gen., Counsel, Austin, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

This is an attorney discipline case. The appellant, Allan Hawkins, appeals from the trial court's order finding him in violation of several Rules of Professional Conduct and suspending him from the practice of law for one year followed by a three-year probated suspension. We reform the trial court's judgment and affirm as reformed.

## FACTS

On August 8, 1994, Midland County Court at Law Judge James Fitz–Gerald issued an order appointing Hawkins to represent Daniel Wayne Sundy in a criminal matter. Sundy was charged with possession of marijuana, two ounces or less, a Class B misdemeanor. Sundy, who was infected with the HIV virus, claimed that his illness required him to use marijuana in order to digest food. Sundy had never previously been arrested. On August 29, 1994, Hawkins filed a "Motion for Appointment of an Effective and Competent Attorney." In the motion, Hawkins contended that he was not competent to practice criminal law and therefore could not represent Sundy without violating Rules 1.01 and 6.01 of the Texas Disciplinary Rules of Professional Conduct. Despite

his contentions of incompetence, Hawkins filed motions for speedy trial, jury trial, and to suppress evidence. Hawkins also filed a request for a court reporter and statement of facts, a motion for production of evidence for examination, and a motion for appointment of experts. On September 7, 1994, Hawkins attended a docket call on behalf of Sundy, and on September 12, he appeared for a scheduled trial date, which was continued.

Although he had claimed to be incompetent in his motion for appointment of competent counsel, Hawkins filed a "Motion for Payment of Fees to Charity in Lieu of Payment to Allan Hawkins" on September 12, 1994. In this motion, Hawkins noted that he had been required "to be in contact with Mr. Sundy and risk exposure to the HIV virus and death" and to "expend a great deal of time and effort to provide emergency representation" to Sundy, which, Hawkins maintained, caused "great inconvenience to Allan Hawkins and his other clients...." Hawkins requested that $2,000 be paid to the Permian Basin Aids Coalition in honor of Sundy as payment for Hawkins' "emergency" representation of Sundy which was, in Hawkins' own words, "above and beyond the call of duty for an attorney and member of the bar of the State of Texas."

On September 20, 1994, the County Attorney offered Sundy a plea agreement, which included payment of a fine. Hawkins sent a copy of the written offer to Sundy, but refused to discuss the merits of the offer with him or advise him whether to accept the agreement. Meanwhile, Hawkins told the prosecutor that Sundy did not have money and therefore could not accept the agreement. In response to the plea offer, Hawkins filed a second motion for appointment of effective counsel along with a brief outlining his incompetence to assist Sundy with the plea negotiations. Judge Fitz–Gerald held a hearing on the second motion. Evidence at the hearing established that Hawkins had served as an Assistant State's Attorney in North Dakota where he had also handled some criminal defense matters such as guilty pleas, traffic tickets, and game violations. He had handled appointed criminal matters in the Midland district courts along with co-counsel. Judge Fitz–Gerald found Hawkins competent to represent Sundy and issued an order requiring him to continue representing Sundy as appointed counsel.

Upon receiving Judge Fitz–Gerald's order, Hawkins sent a letter to Sundy, the text of which was:

> I am enclosing a copy of an order which I received today. Judge Fitz–Gerald has decided that you are not entitled to a lawyer.
>
> Judge Fitz–Gerald swore an oath to God and to man that he would uphold the *Constitution* and laws of the United States and Texas. He has decided that you are not entitled to a lawyer.
>
> Apparently you are only entitled to a lawyer if a cash pay-off is made. I will not make a cash pay-off to obtain judicial favoritism. I believe it is a crime. Apparently that means that you don't get a lawyer. That is peculiar.
>
> I must know even less about the *Constitution* than I thought. I thought the United States *Constitution* applies to you. I thought you are entitled to a lawyer under the *Constitution.*
>
> Although I am not permitted to represent you on the substance of this matter. I have done what I can do. I wish you well. (Emphasis in original).

Sundy, understandably confused, contacted Hawkins for an explanation. Hawkins was "very reluctant" to talk to Sundy, but told Sundy that he (Hawkins) was no longer his attorney and that Sundy should look for another lawyer. Sundy continued to call Hawkins a few times a month in an attempt to see what was happening in his case.

On January 6, 1995, Sundy's case was set for docket call. Although Hawkins admittedly received notice of the docket call, he did not attend nor did he notify Sundy of the setting. At the docket call, Sundy's case was set for a January 23, 1995 trial. Hawkins did not appear for trial, nor did he inform Sundy of the trial date. Sundy's failure to appear resulted in a proceeding to forfeit his bond. In response to a call from the district clerk's office concerning the possible revocation of

Sundy's bond, Hawkins wrote to the court as follows:

> Today my office received a call for Mr. Daniel Sundy. I do not represent Daniel Sundy. This is not news. The court knows it. The file in your office demonstrates that. I am not his courier. I do not work for him. He does not work for me. He is not at this office. He is not at this telephone number.
>
> If you wish to contact Mr. Sundy, do not call me or write me.
>
> If you wish to contact Mr. Sundy, contact Mr. Sundy. Mr. Sundy is easy to contact. He responds to contacts. Mr. Sundy moved to Midland County so that he would be available when the court needed him. I will not act as an intermediary between the court and Mr. Sundy. I will not pass messages back and forth. If you have any message for him it is up to you to contact him.

On February 1, 1995, Sundy received notice that the court intended to revoke his bond. Sundy panicked and called the clerk's office. The clerk told Sundy that a warrant for his arrest had been issued and he should come to the courthouse to straighten the matter out. The clerk tried to reach Hawkins, but could not get him. Judge Alvin Walvoord later found Sundy in the courthouse foyer crying in "a very highly excitable state ... very disturbed and agitated." Judge Walvoord learned that there was a problem with Sundy's bond, but because the judge was on recess from a trial, he could not assist Sundy. He found another judge who was available to hold a hearing for Sundy, and contacted the County Attorney. After a hearing at which Sundy apparently represented himself, Sundy's bond was reinstated. The day after the bond hearing, Hawkins wrote to the court as follows:

> I was out of office yesterday. Last evening I reviewed telephone messages and found a message from Fonda Love related to a hearing yesterday. As the Court knows, I do not represent Mr. Sundy.

After the February bond hearing, the trial court appointed new counsel for Sundy, and the matter was resolved quickly for a fine plus court costs, and Sundy's plea of guilty to possession of paraphernalia.

The Commission for Lawyer Discipline initiated a disciplinary preceding against Hawkins which was eventually tried in district court before Judge George M. Thurmond. The trial court found that Hawkins violated Texas Rules of Professional Conduct 1.01(b)(1), 1.15(c), and 1.15(d). Judge Thurmond assessed a one-year suspension from the practice of law followed by a three-year period of probated suspension against Hawkins. Hawkins appeals with forty-two points of error.

### *INTERPRETATION OF THE RULES*

The majority of the relevant facts in this case are not disputed. What is hotly contested is the appropriate interpretation of the Rules of Professional Conduct in terms of Hawkins' behavior. In Points of Error One, Four, Five, Six, Fourteen, Fifteen, Eighteen, Nineteen, Twenty, Twenty-five, Twenty-six, and Thirty-seven, Hawkins contends that the trial court erred in finding that his conduct violated the Rules of Professional Conduct, and in finding that Rules 1.01(b)(1), 1.15(c), and 1.15(d) applied to him at all. Each of these points is dependent upon Hawkins' interpretation of the Rules and his translation of the conduct the Rules required of him. The Commission, on the other hand, contends that the trial court correctly interpreted the Rules to find Hawkins' conduct in violation.

When considering the Rules, as when considering statutes, the appellate court should look to the entire Rule rather than to one phrase, clause, or sentence. One provision or part should not be given meaning or construction out of harmony or inconsistent with the other provisions.[1] Accordingly, we will review the trial court's interpretation of the Rules as we would review the trial court's interpretation of statutes. Questions of statutory interpretation are

---

1. *State Bar of Texas v. Wolfe,* 801 S.W.2d 202, 203–04 (Tex.App.—Houston [1st Dist.] 1990, no writ).

questions of law that are not entitled to a presumption of validity.[2] We therefore review the trial court's interpretation of the Rules de novo.

According to Hawkins' interpretation of the Rules, Rule 1.01(a) required him to decline to represent Sundy. Rule 1.01(a) mandates

(a) A lawyer shall not accept or continue employment in a legal matter which the lawyer knows or should know is beyond the lawyer's competence, unless:

(1) another lawyer who is competent to handle the matter is, with the prior informed consent of the client, associated in the matter; or

(2) the advice or assistance of the lawyer is reasonably required in an emergency and the lawyer limits the advice and assistance to that which is reasonably necessary in the circumstances.[3]

Hawkins maintains that Rule 1.01(a) required him to decline to represent Sundy despite his appointment and despite Judge Fitz–Gerald's order to continue the representation because the Rule places the determination of competence solely on the attorney. Accordingly, Hawkins argues, he had to defy the appointment and Judge Fitz–Gerald's order or be in violation of the Rules. Hawkins argues that Rule 3.04(d) further supports his actions. Rule 3.04(d) states that an attorney may not

[K]nowingly disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal except for an open refusal based either on an assertion that no valid obligation exists or on the client's willingness to accept any sanctions arising from such disobedience.[4]

Since Hawkins professes to have held a good faith belief that he could not represent Sundy pursuant to Rule 1.01(a), he urges that no valid obligation for him to do so existed and he was forced to openly refuse to follow Judge Fitz–Gerald's order. Thus, Hawkins contends that his open refusal to acknowledge representation of Sundy even after Judge Fitz–Gerald's order insulates him from discipline under the Rules.

 Hawkins fails, however, to consider other provisions of the Rules which belie his construction. It is important to recognize that different parts of the Rules apply to different situations in which an attorney may find him or her self. Rule 1.01(a), the Rule Hawkins relies upon, is stated in general terms of "employment in a legal matter."[5] Another section of the Rules, however, is directed specifically at court appointments. Rule 6.01, entitled "Accepting Appointments by a Tribunal" and placed under the heading "Public Service," states, in pertinent part, that

A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:

(a) representing the client is likely to result in violation of law or rules of professional conduct.[6]

A specific statutory provision ordinarily controls over a general one.[7] Accordingly, when an attorney obtains a representation by appointment, the attorney may not merely decline the representation as provided under the more general Rule 1.01(a), but must "seek to avoid" the appointment only for good cause pursuant to Rule 6.01. We find the phrase "seek to avoid appointment by a tribunal" implies a showing to the tribunal of good cause. In other words, the attorney may not simply decide that he or she is not competent to handle the appointed matter and decline or refuse the representation without the court's permission. We find Professors Sutton and Schwerk's comments on the operation of Rule 6.01 in appointment situations worth repeating here:

**2.** *See Hightower v. State Comm'r of Education,* 778 S.W.2d 595, 597 (Tex.App.—Austin 1989, no writ).

**3.** Tex. Disciplinary R. Prof'l Conduct 1.01(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998).

**4.** Tex. Disciplinary R. Prof'l Conduct 3.04(d).

**5.** Tex. Disciplinary R. Prof'l Conduct 1.01(a).

**6.** Tex. Disciplinary R. Prof'l Conduct 6.01(a).

**7.** *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 357 (Tex.1992).

Though generally a lawyer may freely reject any person's offer of professional employment, a different standard applies when that offer emanates from a court.

. . .

[A] lawyer may decline a representation that could not possibly be handled by the lawyer in a competent manner due to the matter's complexity, a representation wherein the lawyer is unfamiliar with the subject matter of the case, and where the lawyer has insufficient time to acquire the requisite degree of competence. Nevertheless, lawyers can abuse this exception by utilizing it when they presently lack the legal background and training necessary to competently handle a matter but they know they could remedy those defects through reasonable efforts. The ability to attain a law degree and a law license betokens a considerable ability to grasp legal issues. Thus, courts may expect that lawyers will make a good faith effort to utilize those abilities to acquire the requisite degree of competence before they invoke this exception, just as they would if they were approached about taking on an unfamiliar type of matter that they nonetheless believed would be rewarding.[8]

To an extent, Hawkins followed the mandate of Rule 6.01 by filing his motions for appointment of competent counsel and appearing before Judge Fitz–Gerald to argue that his continued defense of Sundy would violate a Rule of Professional Conduct (Rule 1.01(a)) because the matter was beyond his competence.

■ But importantly, once Judge Fitz–Gerald ordered Hawkins to continue the representation, another Rule came into play. Rule 1.15(c) directs that "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."[9] Hawkins' refusal to represent Sundy after he was ordered to do so by Judge Fitz–Gerald runs afoul of Rule 1.15(c). Further, Hawkins' use of Rule 3.04 to justify his refusal to act for Sundy even after Judge Fitz–Gerald's order is, like his reliance on Rule 1.01(a) rather than on Rule 6.01, a misapplication of a Rule germane to a set of circumstances different from his own. When read in isolation, Rule 3.04(d) seems to allow an attorney to defy any court order so long as it is done openly and is based on an assertion that no valid obligation exists. This appears to be precisely what Hawkins did.

Placed in context of the Rule as a whole, however, application of Rule 3.04(d) to Hawkins' situation becomes less than clear. Rule 3.04 is entitled "Fairness in Adjudicatory Proceedings."[10] The Rule speaks in terms of refraining from "obstruct[ing] another party's access to evidence," "falsify[ing] evidence," violating "established rule[s] of procedure or of evidence," asking questions "intended to degrade a witness" or engaging in "conduct intended to disrupt the proceedings."[11] Thus, the Rule is aimed at fairness between the parties to a suit and fairness of the adversarial process. It is rulings within that process that fall under Rule 3.04(d). The appointment of counsel for an indigent criminal defendant is not a ruling that occurs within the adjudicatory proceeding itself.

Moreover, we find another application of the "specific versus general" rule in the interplay between Rules 3.04(d) and 1.15(c). Whereas Rule 3.04(d) refers generally to any ruling of a court, Rule 1.15(c) is specifically directed to an order by the court to continue representation. Rule 1.15(c) forbids an attorney from discontinuing a representation in violation of a court order even if good cause for terminating the representation exists. Accordingly, we find that Rule 3.04(d) is inapplicable when the ruling in question is an order to continue representation. Instead, the more specific Rule 1.15(c) applies to such an order.

---

8. Robert P. Schwerk & John F. Sutton, Jr., *A Guide to the Texas Disciplinary Rules of Professional Conduct*, 27A Hous. L. Rev. 398–400 (1990).

9. Tex. Disciplinary R. Prof'l Conduct 1.15(c).

10. Tex. Disciplinary R. Prof'l Conduct 3.04.

11. Tex. Disciplinary R. Prof'l Conduct 3.04(a), (b), (c)(1), (c)(4), (c)(5).

Additionally, Rule 1.15(c) serves to shield an attorney who holds an honest belief that he or she is incompetent to represent an appointed client from ethical repercussions resulting from the continued court ordered representation. By explicitly requiring the lawyer to accede to the tribunal's ruling to continue representation despite the lawyer's misgivings, Rule 1.15(c) protects the lawyer against a charge of wrongdoing.[12] Accordingly, Hawkins could have followed Rule 1.15(c), continued to represent Sundy, and been protected from any perceived ethical violations based on his alleged lack of criminal law skills without needing to rely on a refusal to represent Sundy under Rule 3.04(d).

We find that the trial court correctly interpreted the Rules of Professional Conduct. Accordingly, we overrule Hawkins' Points of Error One, Four, Five, Six, Fourteen, Fifteen, Eighteen, Nineteen, Twenty, Twenty-five, Twenty-six, and Thirty-seven.[13]

## VAGUENESS

In his second and third points, Hawkins contends that the trial court erred in failing to strictly construe the Rules in his favor, and erred in applying the Rules to him on the ground that the Rules are vague and ambiguous. At the outset, we note that disciplinary proceedings are civil in nature.[14] With the nature of the proceedings in mind, we turn to Hawkins' complaints of vagueness and failure to construe the Rules strictly.

A statute, rule, regulation, or order is fatally vague only when it exposes a potential actor to some risk or detriment without giving fair warning of the nature of the proscribed conduct.[15] Prescribed standards that regulate the conduct of attorneys are subject to traditional tests for vagueness.[16] The traditional test for vagueness in regulatory prohibitions is whether "they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." [17] A regulatory prohibition must give fair notice and adequate warning to those to whom it is directed.[18] In this case, the rules in question are directed to attorneys, a group whose members are specifically trained to consult applicable regulations and the writings of those empowered to interpret those regulations.[19]

We find that the Rules of Professional Conduct gave Hawkins fair and adequate notice of the conduct expected of him. Contrary to Hawkins' assertions, the Rules provide a clear distinction between the actions necessary to decline or withdraw from voluntary employment on the one hand and those necessary to decline or withdraw from appointed representations or court ordered representations on the other. Hawkins can-

12. *See* Robert P. Schwerk & John F. Sutton, Jr., *A Guide to the Texas Disciplinary Rules of Professional Conduct*, 27A Hous. L. Rev. 1, 219 (1990).

13. Hawkins also relies on a footnote in a case from this court, *Perez v. State*, 885 S.W.2d 568 (Tex.App.—El Paso 1994, no pet.). In *Perez*, as in this case, Hawkins had been appointed to represent an indigent criminal defendant and had filed similar motions for appointment of effective counsel. *Id.* at 569. Meanwhile, Perez hired other counsel to represent him. *Id.* Perez pleaded guilty pursuant to the advice of his retained counsel. *Id.* at 570. Hawkins nevertheless filed an appeal on behalf of Perez and argued his own ineffectiveness for failure to adequately advise Perez on his guilty plea. This court found, and noted in footnote five, that Hawkins' argument was incongruous with the facts of the case. *Id.* at 570 n. 5. We intended nothing in footnote five, and find nothing in its language, to support any of Hawkins' assertions in this appeal.

14. *State Bar of Texas v. Evans,* 774 S.W.2d 656, 657 (Tex.1989).

15. *State Bar of Texas v. Tinning,* 875 S.W.2d 403, 408 (Tex.App.—Corpus Christi 1994, writ denied).

16. *Benton v. Commission of Lawyer Discipline,* 933 S.W.2d 784, 787 (Tex.App.—Corpus Christi 1996, no writ).

17. *Benton,* 933 S.W.2d at 787 (quoting *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL–CIO,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973)).

18. *Grayned v. City of Rockford,* 408 U.S. 104, 112, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222 (1972).

19. *Tinning,* 875 S.W.2d at 408.

not make that distinction less clear by simply insisting he failed to perceive it, nor can he claim lack of fair warning on that ground. To the contrary, we find that the ordinary person, or in this case, the ordinary attorney, exercising ordinary common sense could sufficiently understand and comply with the Rules. We therefore overrule Hawkins' second and third points.

### SUFFICIENCY OF THE EVIDENCE: EXPERT TESTIMONY

■ In his seventh through tenth points, Hawkins contends that the evidence was insufficient to prove violations of Rules 1.01(b), 1.15(c), and 1.15(d) because the Commission failed to introduce expert testimony on the application of the Rules and the standard of care required. He cites *Jatoi v. Decker, Jones, McMackin, Hall & Bates* [20] for the proposition that expert testimony on the standard of care is required in an attorney malpractice case. We find *Jatoi* inapplicable, however, because this is not an attorney malpractice case where the standard of care is at issue. Rather, this is a disciplinary proceeding where the appropriate interpretation of the Rules of Conduct and a factual determination of whether Hawkins' conduct met or violated the Rules is at issue. As we have already stated, interpretation of the Rules, like interpretation of statutes, is a matter of law for the court.[21] Accordingly, no expert testimony on the interpretation of the Rules was required. Moreover, no expert testimony on the standard of care required in malpractice cases was required to aid the trial court as the trier of fact in determining whether Hawkins' actions violated the Rules

as interpreted. Accordingly, we overrule Hawkins' seventh through tenth points.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his twelfth, seventeenth, twenty-second, and twenty-seventh points, Hawkins challenges the legal and factual sufficiency of the evidence to support the trial court's findings that he violated Rules 1.01(b), 1.15(c), and 1.15(d).

#### 1. Standard of Review

■ In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary.[22] If any probative evidence supports the jury's determination, it must be upheld.[23]

■ A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust.[24] The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained.[25] It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony.[26] Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive.[27]

#### 2. Applicable Law

The text of the relevant Rules is as follows: **1.01(b)**

**20.** 955 S.W.2d 430, 434 (Tex.App.—Fort Worth 1997, writ denied).

**21.** *See Hightower*, 778 S.W.2d at 597.

**22.** *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ).

**23.** *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron*, 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ); *see generally* WILLIAM POWERS, JR. & JACK RATLIFF, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515 (1991).

**24.** *In re King's Estate*, 244 S.W.2d at 660; *Worsham Steel Co.*, 831 S.W.2d at 81.

**25.** *Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex.App.—El Paso 1981, no writ).

**26.** *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex. App.—El Paso 1984, no writ).

**27.** *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).

In representing a client, a lawyer shall not:

(1) neglect a legal matter entrusted to the lawyer.... [28]

**1.15(c)**

When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.[29]

**1.15(d)**

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.[30]

### 3. Application of the Law to the Facts

■ We find ample evidence in the record to support the trial court's finding of violations of each of these Rules. With regard to Rule 1.01(b), the record reflects that Hawkins neglected Sundy's defense by failing to advise Sundy when Sundy specifically requested advice, failing to appear for a docket call despite admittedly receiving notice of the setting, failing to appear for a potential trial date which would have been known to Hawkins had Hawkins appeared for the docket call, and failing to appear to defend Sundy on the revocation of his bond despite the trial court's telephone request to do so.

The record also displays more than sufficient evidence that Hawkins failed to continue representation of Sundy after Judge Fitz–Gerald's order in violation of Rule 1.15(c). It is undisputed that after a hearing on Hawkins' competence, Judge Fitz–Gerald ordered Hawkins to continue to represent Sundy. Instead, Hawkins wrote to Sundy and told Sundy that the judge had determined Sundy was not entitled to a lawyer to defend him. Hawkins refused to act on Sundy's behalf when appropriately noticed by the court and instead wrote letters to the court claiming that he did not represent Sundy and would not act as Sundy's "courier." Even after being ordered to continue as Sundy's counsel, Hawkins ignored docket call and thereby missed a potential trial date resulting in the threatened revocation of Sundy's bond.

Even under Hawkins' interpretation of the Rules, he failed to comply with Rule 1.15(d) after he allegedly "declined" to represent Sundy. Before new counsel was appointed for Sundy, Hawkins refused to advise Sundy when he requested advice, ignored the docket call and did not inform Sundy of it, missed a potential trial setting, and refused to defend Sundy against the revocation of his bond. These omissions amply illustrate Hawkins' failure to take "steps to the extent reasonably practicable to protect a client's interests" as Rule 1.15(d) requires.

Hawkins did not contradict these facts at trial. Rather, Hawkins' evidence focused on the appropriateness of his actions under his own interpretation of the Rules. For example, Hawkins called several attorneys who testified that in their opinions, the Rules could be read to require Hawkins to act in the manner he did. As such, Hawkins' evidence does little, if anything, to contradict the facts supporting his violation of the Rules as appropriately interpreted. Accordingly, we overrule Hawkins' twelfth, seventeenth, twenty-second, and twenty-seventh points of error.

### SUFFICIENCY OF THE EVIDENCE: SUNDY'S WORRY AND STRESS

■ In his twenty-first point of error, Hawkins challenges the sufficiency of the evidence to support the trial court's Finding of Fact Five that Hawkins' behavior resulted in "worry and stress" for Sundy. We disagree. Sundy testified, by deposition, that he "panicked" when he learned that a warrant had been issued for his arrest. Addi-

---

28. Tex. Disciplinary R. Prof'l Conduct 1.01(b)(1).

29. Tex. Disciplinary R. Prof'l Conduct 1.15(c).

30. Tex. Disciplinary R. Prof'l Conduct 1.15(d).

tionally, Judge Walvoord testified that he found Sundy in an agitated state, crying in the courthouse foyer. Accordingly, we find adequate evidence of Sundy's "worry and stress" to support the trial court's finding.

■ Hawkins also contends that there was no pleading to support a finding of "worry and stress." We conclude no pleading was necessary, as the finding is relevant to the sanction phase of the proceeding in which the trial court must consider, among other things, the loss or damage to the client.[31] Because the Rule required the trial court to consider this element in determining a sanction, we find no pleading was necessary under the circumstances. Accordingly, we overrule Hawkins' twenty-first point.

### FAILURE TO MAKE FINDINGS OF FACT

■ In his eleventh, thirteenth, and sixteenth points, Hawkins alleges that the trial court erred in coming to the legal conclusions that he violated Rules 1.01(b), 1.15(c), and 1.15(d) without making findings of fact as to any of the elements of each. We have reviewed Hawkins' Request for Additional and Amended Findings of Fact and Conclusions of Law and find that he failed to request the allegedly omitted findings. Findings may be presumed when (1) an element of the ground of recovery was included in the findings of fact; (2) the omitted element has not been properly requested; and (3) the omitted finding is supported by the evidence.[32] In this case, the trial court made a finding of fact supporting at least one element of each of the Rules Hawkins was found to have violated.

To reiterate, the relevant Rules require:

#### 1.01(b)

In representing a client, a lawyer shall not:

(1) neglect a legal matter entrusted to the lawyer.... [33]

#### 1.15(c)

When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.[34]

#### 1.15(d)

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.[35]

The trial court's Finding of Fact Six impliedly finds neglect of Sundy's case in that it states Hawkins "failed to notify his client of scheduled court proceedings...." The same finding also satisfies, at the very least, the element of Rule 1.15(d) requiring that an attorney take reasonable steps to protect a client's interests even after termination of a representation. Finding Five satisfies, at the very least, an element of Rule 1.15(c) in that it states Hawkins "refused to continue with his representation of the Defendant despite the Court's ordering him to do so." As we have already discussed pursuant to Hawkins' twelfth, seventeenth, twenty-second, and twenty-seventh points, the evidence is sufficient to support any elements left unstated in the trial court's Findings of Fact. Accordingly, we overrule Hawkins' eleventh, thirteenth, and sixteenth points of error.

**31.** Tex.R. Disciplinary P. 3.10(C), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon 1998).

**32.** Tex R. Civ. P. 299; *Tarrant County Water Control and Improvement Dist. No. One v. Haupt, Inc.,* 854 S.W.2d 909, 913 (Tex.1993); *Lindner v. Hill,* 691 S.W.2d 590, 592 (Tex.1985); *American*

*Nat'l Ins. Co. v. Paul,* 927 S.W.2d 239, 245 (Tex. App.—Austin 1996, writ denied).

**33.** Tex. Disciplinary R. Prof'l Conduct 1.01(b)(1).

**34.** Tex. Disciplinary R. Prof'l Conduct 1.15(c).

**35.** Tex. Disciplinary R. Prof'l Conduct 1.15(d).

## SUFFICIENCY OF THE EVIDENCE: TRIAL DATE

Hawkins' twenty-third and twenty-fourth points of error attack the sufficiency of the evidence to support any implied finding that a firm trial date as opposed to a "potential trial date" was set in Sundy's case. Hawkins fails, however, to suggest the harm, if any, in an implied finding of a trial date in place of a finding of a "potential trial date." The evidence in this case clearly showed that Hawkins ignored a notice of docket call. At this docket call, the trial court set an additional hearing of some sort requiring Hawkins' and Sundy's presence. The evidence further shows that a warrant was issued for Sundy's arrest when neither he nor Hawkins appeared at the second hearing. Thus, Sundy was seriously prejudiced due to Hawkins intentional disregard of the first docket call. Under the circumstances, whether the second hearing was a firm trial date or a "potential trial date" is of little consequence. Accordingly, we do not find that an implied finding of an actual trial date was made by the trial court, nor was such an implied finding necessary to the trial court's judgment. We therefore overrule Hawkins' twenty-third and twenty-fourth points of error.

## DUE PROCESS VIOLATIONS

In his twenty-eighth through thirty-second points, Hawkins contends that he was denied due process by the Commission's addition of alleged Rule violations in its petition to the district court which were not presented to an investigatory committee for a finding of just cause. Hawkins does not identify which allegations were not made in the original complaint before the investigatory committee and they are not apparent from the record.

At his election, Hawkins' case was governed by Part III of the Rules of Disciplinary Procedure. As the Austin Court of Appeals held in *Diaz v. Commission for Lawyer Discipline*,[36]

[T]he various provisions in Part III make it quite clear that district-court proceedings thereunder are original and independent proceedings. They are not proceedings in which the court is called upon to review an action taken in the administrative proceedings that were interrupted by the lawyer's removal of the case to district court. In such court proceedings, 'the Texas Rules of Civil Procedure apply' save as they may be varied by the Rules of Disciplinary Procedure. TEX.R. DISCIPLINARY P. 3.08(b). In ordinary civil suits in district court, a plaintiff may join as independent claims 'as many claims ... as he may have against an opposing party.' TEX. RULE CIV. P. 51(a). Nothing in the Rules of Disciplinary Procedure purports to vary Rule 51(a).[37]

We agree with the Austin Court's analysis. Any due process concerns Hawkins may have had were adequately addressed in the trial process according to the Rules of Civil Procedure. Hawkins was entitled to and received notice of the claims against him in the Commission's Original and Amended Disciplinary Petitions. He was further entitled to and received a full trial on the claims against him as well as his defenses. Accordingly, we find no due process violations and we overrule Hawkins' twenty-eighth through thirty-second points.

## NO PLEADING TO SUPPORT CONCLUSION FOUR

In his thirty-third point of error, Hawkins finds error in the trial court's making its Conclusion of Law Four, that Hawkins violated Rule 6.01 of the Rules of Professional Conduct, when there was no pleading to support the conclusion. The Commission concedes that it did not plead a violation of Rule 6.01. The Commission also argues that the conclusion is harmless because no mention of a violation of Rule 6.01 appears in the judgment. Hawkins has not pointed out any harm. Accordingly, we agree with the Commission and overrule Hawkins' thirty-third point.

---

**36.** 953 S.W.2d 435, 437 (Tex.App.—Austin 1997, no pet.).

**37.** *Id.*

## DEFECTS IN THE UNDERLYING APPOINTMENT

In his thirty-fourth point, Hawkins maintains that his appointment to represent Sundy was fundamentally flawed. In this single point of error, Hawkins makes three different contentions. First, he alleges that the Midland Bar Plan under which he was initially appointed to represent Sundy created an unconstitutional "taking" of his services. Second, he contends that some lawyers are treated differently than others under the Plan thus violating principles of equal protection. Finally, Hawkins argues that under the Plan, he was appointed at random and not on the basis of merit as required by the Texas Code of Judicial Conduct.[38] We note that neither of the first two contentions were raised to the trial court. Accordingly, they are waived. The constitutionality of a statute or rule will be considered only when the question is properly raised and a decision becomes necessary and appropriate to the disposal of the case.[39] Predicates for complaints on appeal must be preserved at the trial court level by motion, exception, objection, or some other vehicle.[40]

Moreover, the sanctions levied against Hawkins in this case do not rest solely on Hawkins' refusal to represent Sundy pursuant to his appointment under the Midland Bar Plan. In this case, Hawkins contested his duty to represent Sundy and was afforded a hearing on his concerns. The trial court found Hawkins competent to represent Sundy and ordered him to continue the representation. The hearing and the trial court's order remove Hawkins' appointment from one at random under the Midland Bar Plan to one specifically based on merit. Accordingly, we overrule Hawkins' thirty-fourth point.

## SANCTIONS OUTSIDE THE COURT'S AUTHORITY

Hawkins alleges in his thirty-fifth point that the trial court had no authority to impose any sanction on him other than those delineated in Texas Rule of Disciplinary Procedure 1.06(T). The trial court's judgment suspended Hawkins from the practice of law for one year, and imposed a three-year probated suspension to be served after the year's suspension. The trial court further required Hawkins to comply with the following conditions during the term of probated suspension:

1. Respondent shall not violate any of the provisions of the Texas Disciplinary Rules of Professional Conduct nor any provisions of the State Bar Rules;

2. Respondent shall not violate the laws of the United States of any other state other than minor traffic violations;

3. Respondent shall maintain a current status regarding membership fees in accordance with Article III of the State Bar Rules;

4. Respondent shall comply with Minimum Continuing Legal Education (MCLE) requirements in accordance with Article III of the State Bar Rules;

5. Respondent shall comply with Interest on Lawyers Trust Account requirements in accordance with Article XI of the State Bar Rules;

6. Respondent shall comply with all requests for information forwarded to him by any grievance committee of the State Bar of Texas;

7. Respondent shall cooperate fully with the General Counsel's office in their efforts to monitor compliance with this order; and

8. Respondent shall provide fifteen (15) hours per month of pro bono services to indigent persons, as referred to him by the Midland County Bar Association, in need of wills, powers of attorney, and similar services and instruments within his field of expertise. Respondent shall begin this service on September 1, 1998 and continue until August 31, 2000. Respondent shall send a report to the State Bar of Texas, 201 Main Street, Suite 1150, Fort Worth,

---

**38.** Hawkins does not provide a cite to the provision of the Code he claims the Plan violates.

**39.** *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807, 813 (1959); *Allen v. Employers Cas. Co.,* 888

S.W.2d 219, 222 (Tex.App.—Amarillo 1994, no writ).

**40.** Tex.R.App. P. 33.1; *PGP Gas Products, Inc. v. Fariss,* 620 S.W.2d 559, 560 (Tex.1981).

Texas 76102, stating that he has complied with this condition of probation. The report is due to the State Bar of Texas Fort Worth office by the 15th of each month following the previous month.

Hawkins contends that the portion of the trial court's judgment requiring him to comply with the list of eight conditions is outside the bounds specified in Rule 1.06. We disagree. Our reading of the judgment reveals that the eight conditions are imposed as conditions of Hawkins' probated suspension. Rule 1.06(T)(5) allows the trial court to probate a suspension "upon such reasonable terms as are appropriate under the circumstances."[41] Thus, the imposition of the conditions is authorized by the Rule. We find that the conditions are appropriate and therefore overrule Hawkins' thirty-fifth point.[42]

## ERROR IN SANCTION

In his thirty-sixth, thirty-eighth, and fortieth points, Hawkins contends that the trial court failed to consider the factors set out in Disciplinary Procedure Rule 3.10 when it considered and imposed sanctions on Hawkins. Rule 3.10 requires the trial court to consider the following twelve factors: nature and degree of the misconduct; seriousness of and circumstances surrounding the misconduct; loss or damage to clients; damage to the profession; assurance that those who seek legal services in the future will be insulated from the type of misconduct found; profit to the attorney; avoidance of repetition; deterrent effect; maintenance of respect for the legal profession; conduct of Respondent during the course of the Committee action; trial of the case; other relevant evidence concerning the Respondent's personal and professional background.[43] We

find that the trial court appropriately considered each of these factors in fashioning Hawkins' sanction in this case. The evidence showed that Hawkins intentionally disobeyed a court order to represent the indigent Sundy in spite of Rule 1.15(c) which clearly required him to do so. Worse, Hawkins wrote to Sundy after Judge Fitz–Gerald's order and told Sundy that Judge Fitz–Gerald had found Sundy was not entitled to an attorney. Although he clearly understood that he was under court order to represent Sundy, Hawkins ignored a docket call which led to further failures to appear and the eventual bond revocation hearing, which Hawkins also failed to attend despite telephone notice from the court. Hawkins wrote snide letters to the trial court in response to notice of hearings, while failing to even communicate the content of these notices to Sundy. The degree and seriousness of Hawkins' misconduct in a case where a gravely ill man's liberty was at stake profoundly and negatively impacted the profession and respect for the profession in the eyes of the public. The trial court correctly concluded that a serious sanction was needed to deter others from similar conduct.

Additionally, the Commission presented evidence that a serious sanction was needed to deter Hawkins from repeating his conduct. Hawkins admitted that he had previously filed ten to twenty similar objections to appointments in criminal cases, and had filed recusal motions against almost every judge who had appointed him. At one of the recusal hearings, Hawkins subpoenaed the entire District Attorney's office, four judges, the County Judge, the County Attorney, and all of the County Commissioners. Moreover, the Commission presented evidence of Hawkins' behavior in the past. For example,

---

**41.** Tex.R. Disciplinary P. 1.06(T)(5).

**42.** Hawkins also complains that unspecified sanctions in the judgment prohibit him from practicing in federal court under a federal license, restrict him from engaging in lawful speech, and prohibit him from collecting fees earned prior to his suspension. We do not find any argument, authority, or reference to the statement of facts in Hawkins' brief supporting these contentions. Accordingly, we have nothing to review. Tex.R.App. P. 38.1(h); *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.,*

889 S.W.2d 666, 671 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Moreover, we have reviewed the judgment in an attempt to discern the source of Hawkins' complaints and we find nothing barring Hawkins from practice in federal court under a license from a state other than Texas, nothing offensive to the First Amendment, and nothing prohibiting Hawkins from collecting fees for work performed prior to his suspension.

**43.** Tex.R. Disciplinary P. 3.10.

Hawkins has twice been found in contempt for non-payment of child support. He has been sanctioned for filing groundless pleadings and committing acts in bad faith for purposes of harassment during a will contest case. During the underlying disciplinary proceeding, Hawkins filed a motion for sanctions against counsel for the State Bar and State Bar General Counsel. Hawkins alleged in the motion that the judiciary of Midland County was extorting bribes, yet he admitted that he had no evidence that any judge actually requested or took a bribe.

Although Hawkins presented six witnesses at trial, each a personal or professional acquaintance who testified that Hawkins was an impressive tax and probate attorney who cares about his profession, this evidence does little to contradict the evidence of serious misconduct in this case. Accordingly, we find that the trial court was within its discretion in balancing the evidence before it and applying the evidence in terms of the factors set out in Rule 3.10. We therefore overrule Hawkins' thirty-sixth, thirty-eighth, and fortieth points of error.

### FAILURE TO STAY SANCTION PENDING APPEAL

In his thirty-ninth point of error, Hawkins contends that the trial court erred in failing to allow him to continue to practice pending this appeal. Disciplinary Procedure Rule 3.14 provides that "a judgment of suspension shall be stayed during the pendency of any appeals therefrom, if the district court finds, upon competent evidence, that the Respondent's continued practice of law does not pose a continuing threat to the welfare of Respondent's clients or to the public."[44] We find, for the same reasons we overruled Hawkins' thirty-sixth, thirty-eighth, and fortieth points of error, that the trial court did not abuse its discretion in refusing to make a finding that Hawkins' continued practice would pose no continuing threat to the welfare of the public. Accordingly, we overrule Hawkins' thirty-ninth point.

### JUDGMENT INCORRECTLY REFERS TO AGREEMENT

In his forty-first point, Hawkins contends that the trial court erred by stating in its judgment that the judgment was agreed. Indeed, the judgment refers to itself as an "Agreed Final Judgment." There is no evidence that Hawkins agreed to the judgment. The term appears to have been a drafting error. We find no harm to Hawkins that would require reversal, however, and he cites us to none. Accordingly, we sustain Hawkins' forty-first point of error and reform the judgment to delete any reference to an agreement or an agreed judgment.[45]

### ATTORNEY'S FEES AWARD

In his forty-second point, Hawkins contends that the evidence is insufficient to support the trial court's award of $15,000 in attorney's fees to the Commission. We find, however, that the parties stipulated $15,000 was a reasonable and necessary fee for the litigation. Accordingly, we find the evidence sufficient to support the trial court's award and we overrule Hawkins' forty-second point.

### CONCLUSION

Having considered and overruled each of Hawkins' points of error with the exception of Point of Error Forty-one, we reform the trial court's judgment to delete any reference to an agreement or an agreed judgment pursuant to our disposition of Point of Error Forty-one and we affirm the judgment as modified.

---

44. TEX.R. DISCIPLINARY P. 3.14.

45. *See* TEX.R.APP P. 43.2(b).